ANDRÉS SOSA REYES ET AL., Plaintiffs, and ANDRÉS SOSA REYES, Appellant, v. JOSÉ FIDALGO DÍAZ, Defendant and Appellee.

No. 7611. Argued June 8, 1939.—Decided February 2, 1940.

*E. H. F. Dottin* for appellant. *Federico García Veve* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The plaintiffs herein seek to recover a house and the value of the ·fruits and income therefrom. They allege to be the owners of the immovable in the proportion of one-third, as the share belonging to Carmen Gonázlez and two-thirds, as that belonging to the other plaintiff Andrés Sosa Reyes; that the property sought to be recovered is recorded in favor of the plaintiffs in the Registry of Property of San Juan; that the same is worth $600; and that ever since September 6, 1934, the defendant, without right or title, retains the material possession of the immovable and refuses to deliver the same to its owners, the plaintiffs herein. In the second cause of action judgment is requested for the value of the fruits and income from the property.

The answer of the defendant sets up the following defenses:

"1. That the deed whereby Obdulia Sosa de González, sister to plaintiff Sosa Reyes, conveyed to the latter a two-third interest in the property is simulated and fraudulent, said deed of conveyance having been executed with the sole purpose of defrauding the creditors of said woman González, and that there was no delivery of the purchase price as stated in the deed.

"2. That plaintiff Sosa Reyes is estopped from denying the simulation of said conveyance, as he had led everybody to believe, by his acts and conduct, that there was such simulation.

"3. That the defendant is in possession of the property as owner because he had bought the same in a judicial sale and by deed executed by the marshal of the Municipal Court of Carolina on September 10, 1934, in an action of debt prosecuted in said court by Angel Fidalgo against Obdulia Sosa de González.

"4. That the plaintiffs have never been in possession of the property nor have they any interest therein.

"5. That the defendant is a *bona fide* purchaser, as he bought the property in a sale at public auction, for cash, and with the knowledge that the woman González was the owner of the property, as shown by her acts and conduct; that at the time of its purchase by the defendant the property was not recorded in the registry of property, the attachment having been recorded with the remediable defect that the immovable had not been previously recorded."

After a trial the District Court of San Juan entered the following judgment:

"1. The claim of Carmen González is sustained as to one-third interest of the property but her claim for fruits is dismissed for lack of evidence, the costs on the defendant and a further some of $75 as attorney's fees.

"2. The claim of Andrés Sosa Reyes is dismissed in every particular. The latter is mulcted in costs and to pay a further sum of $75 as attorney's fees, because, in the opinion of the trial judge, there was obstinacy and malice in bringing the action."

Plaintiff Sosa Reyes, feeling aggrieved, brought this appeal, in which he alleges that the lower court committed error:

"1. In weighing the evidence.

"3. In holding that plaintiff Sosa Reyes is estopped by his inactivity and late action in prosecuting this revindicatory action.

"2. In holding that defendant is entitled to a two-third interest in the property.

"4. In relieving the defendant from the effects of the doctrine of *caveat emptor* and in declaring him to be a *bona fide* purchaser."

We will discuss the errors in the order of their assignment:

■ It appears from the evidence that the complaint in the action brought by Angel Fidalgo against Obdulia Sosa

to recover the sum of $309.93 on a promissory note was filed on February 1, 1934; that the summons was served and the attachment levied the following day; that on January 29, three days after the commencement of the action, Obdulia Sosa sold to her brother Andrés Sosa her two-third interest in the property attached for $500 which the vendor stated she had received before the execution of the sale; that José Fidalgo Díaz bought the property attached at the sale by public auction and paid for it in cash the sum of $330.80, taking possession of the immovable on September 10, 1934; that Obdulia Sosa did not vacate the property until the end of October of the same year; that during all the time elapsed from the commencement of the action on the 1st of February until the occupation of the immovable, nothing was said to the Fidalgo brothers regarding the sale from Obdulia Sosa to her brother Andrés, notwithstanding the fact that the notary who authenticated the sale was the attorney for Obdulia Sosa; and that the deed of sale in question was not presented in the registry until November 2, 1934, that is, nine months after the execution thereof and when the purchaser Fidalgo had already taken possession of the immovable.

To show that the sale to him from his sister Obdulia was for valuable consideration, the defendant offered his own testimony and that of witnesses who had stated that they had witnessed the delivery of part of the purchase price. On cross-examination, however, they admitted that they had that information from the Sosa brother and sister. The lower court considered such evidence insufficient to prove the delivery of the purchase price prior to the execution of the sale deed. In stating the grounds for not believing the testimony of the plaintiff and his witnesses, the court expressed itself as follows:

"The special circumstances concurring in the present case which prove fraud and simulation are so many that we should have to close our eyes to the facts in order to give credence to the story that the plaintiff tries to impose on us. In the first place, it must be

observed that the complaint of Angel Fidalgo was filed, as already stated by us, on February 1, 1934, and the summons returned on the following day, and just on Monday of the same week, January 29, the deed of sale to the purchaser was executed. We do not wish to cast aspersions on anybody, but the fact is that we do not even have the proof of the notarial records, as we would have had if the deed had been executed two or three weeks prior to the filing of the suit. The deed was executed before the very notary which ten days after appeared as counsel for defendant Obdulia Sosa in opposi· tion of the claim of plaintiff Angel Fidalgo. Nothing was said to plaintiff Fidalgo regarding the title to the property that on the same February 2 was attached to secure the judgment. Andrés Sosa, now plaintiff, failed to appear to protect his ownership title, although it was known to him that the property had been attached. The sale at public auction was finally advertized and he failed to act. The sale was held and the property awarded to a third party, José Fidalgo, and the plaintiff herein took no action. The property was delivered to the purchaser at the auction sale and then vacated by Obdulia who was given $25 to pay for the moving and neither she nor her brother, the plaintiff, told the defendant about the deed of January 29, 1934, and it was not until November 2 of the same year that, notwithstanding all the above facts which would have set in motion the most apathetic man, the said deed in favor of Andrés Sosa was presented in the registry of property.

''This unusual apathy to protect his interests, which is at variance with the attitude of the plaintiff in exacting from his sister when delivering to her the balance of $200 not merely a private instrument but a title deed of the sale with all the formalities of a public deed, is only explainable by either of the following reasons: either the plaintiff herein was so mistrustful of the justice of his cause, to such an extent that he had to go to court to defend a right which did not exist, or his own conscience sealed his lips and tied his hands so as not to wrest from somebody else that which lawfully belonged to him.

''We know that mere suspicion, however strong and well grounded, is not sufficient to hold that a conveyance or sale has been effected in fraud of creditors. *Méndez Vaz* v. *De Choudens*, 35 P.R.R. 516; but we also know that generally fraud artfully prepared with all the foresight of which the human mind is capable to avoid discovery, can very rarely if ever be shown by direct evidence. That is why, as in the case at bar where in addition to the circumstance of the

relationship between the vendor and the purchaser which compels us to look with caution at the transaction, there concur all the other circumstances already stated, all of them foreign to the usual ways in the conduct of the relations between men, we must conclude that in this revindicatory action the plaintiff has failed to fully prove his ownership, as alleged by him, of the two-third interest in the property sued on, the maxim *actore non probante, reus est absolvendi* being perfectly applicable in the premises.''

We do not feel inclined to conclude that the evidence has been erroneously weighed. Its perusal leaves in the mind the impression that the conveyance from Obdulia to her brother Andrés was without any valuable consideration whatever. Such being the case, the doctrine set up in *Colón* v. *Schlüter*, 48 P.R.R. 859, 861, is applicable. In the above case this court expressed itself as follows:

"In the cases of *García* v. *Banco Popular*, 39 P.R.R. 769; *Lebrón* v. *F. Fresno & Co. et al.*, 39 P.R.R. 814; and *Santini Fertilizer Co.* v. *Burgos et al.*, 34 P.R.R. 830, we held that section 1264 of our Civil Code provides that contracts by virtue of which a debtor gratuitously disposes of property are presumed to be made in fraud of creditors, and that according to the judgment of the Supreme Court of Spain of February 20, 1899, it will be understood that a price or its equivalent is lacking in contracts when the notary does not certify to its payment, or if the contracting parties acknowledge that such payment was made prior to the execution of the deed and this fact is not proved. We also said that such contracts will be presumed to have been executed without consideration, unless it be proved that the price was paid.''

As the presumption of fraud has not been overcome by means of authentic proof of the delivery of the purchase price, the lower court did not err in holding that the defendant was the owner of a two-third interest held by Obdulia Sosa in the house in question, and therefore the lower court did not commit either the second error assigned.

The first two assignments of error having been declared without merit, the third one is of no importance and does not deserve to be passed upon. The conduct of the

plaintiff and appellant in keeping idle and inactive during the prosecution of the action against his sister and while the property bought by him three days before the commencement of the action was being attached and sold, the fact that Obdulia Sosa continued in possession of the property after selling it to the plaintiff and until she was ejected by the defendant who had to give her money to move, and the delay of almost two years in claiming the property, are facts that the district court could and should take into account in coming to a conclusion regarding the good or bad faith in the conveyance from the Sosa sister to the brother.

██ We approve the decisions cited by appellant regarding the doctrine of *caveat emptor,* according to which the purchaser at a public auction sale buys at his risk and acquires only the same title and interest in the property sold as pertained to the judgment debtor. If the conveyance from the debtor, Obdulia Sosa, to her brother, plaintiff and appellant, could be held to be a *bona fide* conveyance for valuable consideration, without any intent to defraud the creditors of said Obdulia Sosa, then it might be said that defendant Fidalgo bought at his own risk and acquired nothing as the vendor no longer owed anything. As the lower court held, and in our opinion rightly so, that the conveyance was simulated in order to defraud her creditor Fidalgo, it must therefore be concluded that as regards the said creditor Obdulia Sosa was still the owner of the property and that every title, right or interest therein belonging to her was conveyed by virtue of the judicial sale to the purchaser at the auction sale who acquired a better title than the one acquired by the plaintiff through the simulated conveyance. Where a plaintiff fails to show a better title than that of the defendant, an action to recover real property does not lie. *Santiago et al* v. *Santiago et al.,* 28 P.R.R. 903.

The judgment appealed from must be affirmed

Mr. Justice De Jesús took no part in the decision of this case.